## Grim, Appellant, v. Walbert.

*Equity—Costs—Discretion of chancellor.*

Costs in equity are always within the discretion of the chancellor, and it is only where there is a clear abuse of this discretion that the Supreme Court will interfere.

On a bill in equity to correct a mistake in a deed where it appears that plaintiff was a party to the deed which was executed when defendant was an infant, and it does not appear that plaintiff before the bill was filed offered to explain to defendant the fact of the mistake, or the grounds upon which he based his allegation of mistake, costs will be imposed upon plaintiff although the decree is in his favor.

Argued Jan. 30, 1893.   Appeal, No. 259, Jan. T., 1892, by plaintiff, James Grim, from decree of C. P. Lehigh Co., Nov. T., 1890, No. 1, in equity, imposing costs upon plaintiff in bill in equity against Henry Walbert et al.   Before Paxson, C. J., Green, Williams, McCollum, Mitchell and Dean, JJ.

Bill to correct mistake in a deed.

The case was referred to Fred. M. Runk, Esq., as master, who recommended a decree in favor of plaintiff, with the costs on defendants. Exceptions were filed by defendants, but none as to the imposition of costs. The opinion of the court below was as follows, by ALBRIGHT, P. J.:

" When Jacob H. Walbert died, his land, now owned by plaintiff, had resting upon it an annuity due Judith Walbert of $81.00. The legatees and legal representatives of Jacob Walbert, Jr., deceased, who was the father of Jacob H., and the husband of Judith, had no demand upon the land. It seems they had been paid the legacies given to them by the will of Jacob. At least it is not alleged by defendants that the $1,350 mentioned in the deed and agreement sought to have reformed had any reference to their legacies.

" Jacob H. Walbert, by his will, gave his wife the annual interest of one third of the value of his real estate, and the real estate itself to his children. His executors found it necessary to sell land for the payment of debts. They petitioned for and obtained an order of the court for that purpose. The court directed that the money proceeds of sale, remaining after payment of debts, should be appropriated as directed by the will of Jacob H. Walbert. Ten per cent was to be paid down and the balance on April 1st, following, 1874.

" Obedience to said order would result in a sale where the purchaser would pay what he bid, and he would take the land burdened with the annuity of Judith Walbert. Daniel Wieser, one of the executors, made return that he had sold three tracts, among them one containing 84 $\frac{148}{100}$ acres to James Grim, the plaintiff, at $41.00 an acre, which sale was confirmed on September 8, 1873. At said price, Grim's tract brought $3,572.12.

" In the auditor's report on the account of said executors, they are charged with two small sums, the proceeds of two other tracts—and with $3,697.92, the price of the tract sold to Grim. It is said, and it is probably correct, that interest on the price bid was exacted from Grim.

" A deed by said executors to Grim was given on April 1, 1874. It recites said proceedings and a sale at $3,572.12. It contains a condition that $81.00 be paid annually to Judith Walbert during her life ; and also the condition alleged to be a mistake, that is, that at the death of said Judith, the princi-

pal sum of $1,350 to be paid to the heirs and representatives of said Jacob Walbert, deceased. The receipt at the foot of the deed is for $3,572.12, 'in full of consideration money, subject, nevertheless, as above mentioned.'

" At the same time the agreement referred to in the 3d paragraph of the bill was entered into by plaintiff and others interested. It sets forth that $1,350 shall be charged on the land purchased by plaintiff—the language is the same as in the deed, concerning the charge—and that the other land of Jacob H. Walbert shall be released from the $1,350 and interest thereon. Said Judith was one of the parties to the agreement.

" The burden is upon the plaintiff to show that the requirement to pay the $1,350 was inserted in the deed and agreement by mistake.

" The proceedings for the sale show that he was under no obligation to pay or undertake to pay it. Upon payment of the $3,572.12 he was entitled to a deed from the executors. The stipulation to pay the annuity to Judith was unnecessary. That was a first charge, the order of court nor the contract of the executors and purchaser could affect it. The parties interested could and did limit it to a portion of the land. According to defendant's contention, even, there is a mistake in the writing concerning the payment of the $1,350. It is written that it is to be paid to the representatives of Jacob Walbert, Sr. (the husband of Judith). In no event could they recover it. If it is owing it is part of the consideration of the sale of the estate of Jacob H. Walbert, and would have to be adjudged to his legal representatives. A suit for its recovery was brought by Sarah Walbert, the sole living representative of Jacob H., before this proceeding was commenced. To entitle her to recover, the condition in the deed and the stipulation in the agreement would have to be reformed, or treated as reformed. If anybody is entitled to the $1,350, it is she, as the representative of Jacob H., not as the representative of Jacob, Sr. If the latter were the case, she would have to share the sum with the other representatives of Jacob, Sr., named as defendants, who have no shadow of claim to it.

" I have no doubt that the learned master decided correctly in holding that the promise to pay the $1,350 was put in the writings by mistake.

" The testimony concerning the talk at the sale, and the probable reference in the last conditions of sale touching the $1,350 is so uncertain that nothing can be made out of it, except that it was mentioned. It is likely that, in order to illustrate what the annuity or dower charge was, it was calculated and declared that it was the annual interest on $1,350. That the purchaser was to pay $1,350 besides his bid is contradicted by the action of the executors, who no doubt acted honestly. They say nothing of it in their return to the order, nor do they account for it.

" The first impression naturally is that the $1,350 was a part of the $3,572.12 ; that so much of the price was withheld during the lifetime of the annuitant so that the land should cost the purchaser no more than $3,572.12. But the action of the executors referred to is inconsistent with that theory. It is conceded that plaintiff paid $3,572.12. Under ordinary circumstances it would be difficult for plaintiff to show that the condition in the deed to him and in the agreement signed by himself is to be treated as of no effect. The excuse that he is illiterate and unfamiliar with the English language (which is no doubt true) would not avail him much.

" But as already remarked his understanding to pay the $1,350 was nudum pactum, according to the record. The deed of the executors is but little more than evidence of the proceedings in court, and an acknowledgment that the purchaser had paid to them his bid. So the burden resting on the plaintiff to establish his contention is comparatively light. Plaintiff has shown that he is entitled to the relief prayed for. Neither he nor the other parties to the writings knew, when they were made, that they required the payment of the $1,350. The person who wrote the deed was the executors' counsel. Had the executors or their counsel thought that Grim was to pay $1,350 additional, they would have accounted for it. It was a mutual mistake. The master recommends that the costs be imposed on the defendants. No question as to this has been raised, but it strikes me that this would be manifestly wrong. Therefore the recommendation will not be acted upon.

" Exactly what the attitude of the defendants was is not plain, because there was no answer. There was an agreement to waive it, and to have a master appointed and to proceed be-

fore him on the bill alone. Sarah Walbert, the only one really interested, was an infant when the writing was made. She and some of the defendants had personal knowledge of the facts at the foundation of the controversy. Plaintiff was a party to the writings in question, defendants not, and they had a right to assume that the plaintiff was bound by his written undertakings. There is no showing that the plaintiff, before said suit was brought or the bill filed, made clear to defendants, or offered to explain to them the fact of the mistake, nor that he stated then the grounds upon which he based his allegation of mistake. If the failing party in an equity proceeding can show to the court any circumstances which may satisfy it that it would be against the ordinary principles of justice that he should pay the costs, he will be permitted to do so; and the court will even under certain circumstances not only excuse the unsuccessful party from the payment of costs to his opponent, but will actually throw his costs upon the party succeeding; cases of the latter kind, however, are being limited: Brightly, Eq. § 775. I deem it just that the plaintiff should pay the costs of correcting an error which was occasioned by his fault in part—and that defendants should recover from him their costs. Defendants were justified in insisting upon their apparent rights. Sarah especially had a right to suppose that plaintiff owed to her, or the executors of her father's estate, the $1,350 in some form. It would be unreasonable to say that plaintiff should have been excused from performing his written promises until he had made it plain that they were made in mistake. Substantially all that was done before the master was necessary to show the mistake—defendants were justified in making the defence before the master. Defendants will be awarded only the expense of subpoenaing witnesses and legal fees for the attendance of the same."

*Error assigned* among others was in decreeing that plaintiff pay the costs, including bill for defendants' witnesses and for subpoenaing the same.

*Evan Holben*, for appellant, cited: Coleman v. Ross, 46 Pa. 181; Sayen v. Johnson, 4 Pa. C. C. R. 360; Burke v. Teller, 49 Leg. Int. 15; Biddle's Ap., 19 W. N. 219.

No paper book or argument offered for appellee.

PER CURIAM, February 13, 1893.

The single question in this case is whether the plaintiff or the defendants shall pay the costs of the proceedings below. The costs in equity are always within the discretion of a chancellor, and it is only where there is a clear abuse of this discretion that we would interfere. We see no such abuse in this case, and for this reason

The decree is affirmed, and the appeal dismissed at the costs of the appellant.